UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

BETTY MAE SEMENIUK,

        Debtor,

_____/

Case No. 10-44396
Chapter 7
Hon. Walter Shapero

JOHN TWEEDIE,

        Plaintiff,

v.

BETTY MAE SEMENIUK,

        Defendant.

_____/

Adversary No. 10-05605

## **OPINION GRANTING PARTIAL SUMMARY JUDGMENT**

### **Introduction**

In this matter, a plaintiff seeks partial summary judgment in an 11 U.S.C. § 523(a)(2)(A) proceeding on the theory that an arbitration award and resulting state court judgment have a collateral estoppel effect in the present action.

### **Facts**

This is about the business relationship between John Tweedie ("Plaintiff"), Michael Hermoyian ("Hermoyian"), and Betty Semeniuk ("Defendant") that went bad. Plaintiff borrowed a total of $363,297.58 on separate occasions from Alden State Bank in order to fund the said threesome's joint venture into the retail fruit juice market. The balance that Plaintiff still personally owes the bank on that debt is alleged to be $310,987.00. Plaintiff alleges that Hermoyian and

Defendant failed to use those funds as they mutually intended, and instead diverted the money for their own personal purposes.

Having not been repaid, Alden State Bank and Plaintiff consequently sued Hermoyian and Defendant jointly and severally in a Michigan state court under various theories, including fraud, misrepresentation, and conversion. The parties agreed to arbitrate that state court action, but immediately thereafter Hermoyian and Defendant filed separate chapter 7 bankruptcy petitions. In both Hermoyian's bankruptcy before another Judge (Case No. 10-44423) and in Defendant's present bankruptcy before this Court, Plaintiff subsequently sought and received stay lifts for the limited purpose of permitting the completion of the state court arbitration. The arbitrator resumed the arbitration and issued an extensive report including many findings of fact and law. Notwithstanding the at times somewhat clouded and dense nature of his report, the arbitrator came to the following conclusions:

> (1) At all pertinent times, Hermoyian, Semeniuk, [and their business entities] were alter egos of one another.
> (2) When the misrepresentations were made by Michael Hermoyian and Betty Semeniuk in order to obtain funds from Tweedie . . . , Hermoyian and Semeniuk knew them to be fals [sic] or made them recklessly and without regard to their truth or falsity and with the intent to defraud and deceive Tweedie. When the aforesaid non-disclosures occurred, Hermoyian and Semeniuk know or believed them to be material to Tweedie's decision to advance money and render services and know or believed that the non-disclosures would deceive and mislead Tweedie.
> . . .
> (7) The money advanced by Tweedie to Hermoyian, Semeniuk and their alter egos were obtained by false pretenses, false representations, and actual fraud of Hermoyian and Semeniuk.
> . . .

2

10-05605-wsd    Doc 38    Filed 07/05/12    Entered 07/05/12 12:09:16    Page 2 of 10

> (9) Hermoyian and Semeniuk's false assurances operated to defraud and deceive Tweedie. As a result, Tweedie continued to advance money and expend time on behalf of the business.
>
> . . .
>
> (11) Hermoyian and Semeniuk willfully, intentionally, fraudulently and through concerted action conspired among themselves to convert Tweedie's money and property rights, . . . , to defraud and deceive Tweedie . . . .
>
> . . .
>
> (13) As a direct and proximate result of the acts and/or omissions committed by Michael Hermoyian and Betty Semeniuk, Third Party John Tweedie has been damaged and will continue to be damaged, including loss of money, property, reputation, and credit worthiness.
>
> . . .
>
> V. Damages
>
> . . .
>
> As noted in the The Findings of Fact and Conclusions of Law, there is no bona fide dispute that Hermoyian and Semeniuk converted property of Tweedie that Tweedie's proofs of Debt to Alden State Bank $310,987.00; . . . .

(Mot. Summ. J. (Docket No. 29), Ex. 6-A at 28-33.) In its judgment that followed, based on the arbitrator's report, the state court stated,

> "IT IS HEREBY ORDERED that . . . the November 1, 2010 findings, conclusions and award of Arbitrator William Clark, Esq., incorporated herein by this reference, are confirmed and adjudicated to be correct; a judgment for $5,442,846.47 plus interest pursuant to MCL 600.6013 [sic] is entered for John Tweedie and against Michael George Hermoyian and Betty Semeniuk, jointly and severally . . . .

(Mot. Summ. J. (Docket No. 29), Ex. 6-B at 2.)

Once the arbitration concluded and the state court entered the judgment adopting the arbitrator's report, Plaintiff prosecuted his adversary proceeding against Hermoyian (Adversary No. 10-05607) under § 523(a)(2), (a)(4), & (a)(6) and § 727(a)(2), (a)(3), (a)(4), &

3

(a)(5).[1] That court bifurcated the action into § 523 and § 727 matters, and a two-day trial on the § 523 portion of the adversary proceeding thereafter ensued. In the 70-page opinion that resulted, the Judge noted the difficulty encountered in trying to parse through the arbitrator's report and the details provided therein. See Tweedie v. Hermoyian (In re Hermoyian), 466 B.R. 348, 366-67 (Bankr. E.D. Mich. 2012). Regardless, that Judge was nonetheless able to rule: "[T]he Court finds that the requirements of collateral estoppel have been met under § 523(a)(2)(A) based on misrepresentations and false pretenses, but not actual fraud, and Tweedie has met his burden of proof that the sum of $310,987.00 is a non-dischargeable debt." Id. at 381. Plaintiff appealed the ruling (District Court Case No. 12-11432) on the basis that he was entitled to a greater amount of nondischargeable debt under § 523. Before the District Court could rule on the appeal, however, the parties settled that suit via mediation.

Here, Plaintiff presents an adversary proceeding almost identical to that which he filed in the Hermoyian case, albeit minus the § 523(a)(4) count, in which he seeks for purposes of this partial summary judgment motion at least the same $310,987.00 to be declared nondischargeable as to Defendant as well. In responding to Plaintiff's dispositive motion, Defendant claims that her case is distinguishable from the Hermoyian proceeding saying:

> The specific findings of fact set forth in the Arbitration Award pertaining to Defendant fail to find with specificity all of the required elements of §523(a)(2)(A) [sic] of the United States Bankruptcy Code as applied to Defendant. Specifically, [(1)] whether Defendant, as opposed to Hermoyian, obtained money from Tweedie; [(2)] whether Tweedie justifiably relied on any false representations or omissions of Defendant; and [(3)] whether any of Defendant's

---

[1]Plaintiff appeared to mistakenly state in that complaint that he was proceeding against Hermoyian under § 727(a), (b), (c), & (d), when he apparently meant § 727(a)(2), (a)(3), (a)(4), & (a)(5).

4

> misrepresentations and/or omissions were the proximate cause of Tweedie's damages.

(Opp'n Resp. Br. Mot. Summ. J. 2.) The Court must hence primarily consider the arbitrator's report, the state court judgment adopting the report, and the Bankruptcy Court's opinion in the Hermoyian proceeding to determine whether Plaintiff is entitled to partial summary judgment.

## Discussion

Fed.R.Civ.P. 56(c) provides the statutory basis for summary judgment, and is made applicable to adversary proceedings via Fed.R.Bankr.P. 7056. Summary judgment is only appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48. A "genuine" issue is present "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

"The initial burden is on the moving party to demonstrate that an essential element of the non-moving party's case is lacking." Kalamazoo River Study Group v. Rockwell Int'l Corp., 171 F.3d 1065, 1068 (6th Cir. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). "The burden then shifts to the non-moving party to come forward with specific facts, supported by evidence in the record, upon which a reasonable jury could return a verdict for the non-moving party." Kalamazoo River Study Group, 171 F.3d at 1068 (citing Anderson, 477 U.S. at 248). "The non-moving party, however, must provide more than mere allegations or denials . . . without giving any significant probative evidence to support" its position. Berryman v. Rieger, 150 F.3d 561, 566 (6th Cir. 1998) (citing Anderson, 447 U.S. at 256).

5

Plaintiff is the moving party here, and he is proceeding on the averred basis that the arbitrator's report and the state court judgment adopting the finding therein necessarily establish by application of collateral estoppel principles that $310,987.00 owed to him by Defendant is nondischargeable under § 523(a)(2)(A) and a full trial thereon is thereby precluded. In order to satisfy the requirements of § 523(a)(2)(A), Plaintiff has the burden of showing that: (1) Defendant obtained money through a material misrepresentation that, at the time, she knew was false or made with gross recklessness as to its truth; (2) Defendant intended to deceive him; (3) He justifiably relied on Defendant's false representation; and (4) His reliance was the proximate cause of his loss. See Nehasil v. Grenier (In re Grenier), 430 B.R. 446, 452 (E.D. Mich. 2010) (citing Rembert v. AT&T Universal Card Servs., 141 F.3d 277, 280-81 (6th Cir. 1998) (citation and footnote omitted)). Plaintiff must carry his burden by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291 (1991).

"Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." Montana v. United States, 440 U.S. 147, 153 (1979) (citations omitted). In Livingston v. Transnation Title Insurance Co. (In re Livingston), 372 Fed. Appx. 613, 617 (6th Cir. 2010) (citations omitted), the Sixth Circuit Court of Appeals confirmed that principles of collateral estoppel apply in § 523(a)(2) actions. See also Grogan, 498 U.S. at 285 ("[C]ollateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)."). In Livingston, 372 Fed. Appx. at 617, the Sixth Circuit followed another bankruptcy court in this district in looking to Michigan law to determine whether a Michigan state court judgment has a preclusive effect. See also Migra v. Warren City Sch. Dist. Bd. of Educ., 465

6

U.S. 75, 81 (1984) ("[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the [s]tate in which the judgment was rendered.").

Under Michigan law, collateral estoppel applies when: (1) there is identity of parties across the proceedings; (2) there was a valid, final judgment in the first proceeding; (3) the same issue was actually litigated and necessarily determined in the first proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding. Phillips v. Weissert (In re Phillips), 434 B.R. 475, 485 (B.A.P. 6th 2010) (citing Hinchman v. Moore, 312 F.3d 198, 202 (6th Cir. 2002) (citations omitted)). "The fact that the Judgment in the State Court Lawsuit confirmed the Arbitration Award does not vary the application of these principles. Michigan courts have squarely held that collateral estoppel principles apply to factual findings made during an arbitration proceeding." Tweedie, 466 B.R. at 362.

Defendant does not dispute that a Michigan state court judgment and the arbitrator's report that it adopts can have a collateral estoppel effect in a § 523(a)(2)(A) nondischargeability action. She instead claims that simply three crucial issues were not actually litigated and necessarily determined by the arbitrator: (1) whether Defendant actually obtained money from Plaintiff; (2) whether Plaintiff justifiably relied on any false representations or omissions of Defendant; and (3) whether any of Defendant's misrepresentations and/or omissions were the proximate cause of Plaintiff's damages. (Opp'n Resp. Br. Mot. Summ. J. 2.) The arbitrator's report, state court judgment, and the Hermoyian opinion considered in toto lead to the conclusion that all three issues were actually litigated and necessarily determined, and that therefore a preclusive effect derives from the state court proceedings.[2]

---

[2] Michigan law of fraud parallels § 523(a)(2)(A) in terms of the proofs required to prevail; so one can conclude the state court fraud findings also satisfy the bankruptcy requirements as well.

7

At the outset, the Court takes particular note of the arbitrator's factual and legal conclusion that Hermoyian and Defendant were at all relevant times alter egos of each other, and that their debt to Plaintiff is indistinguishable between them. Further, the arbitrator repeatedly concluded in his report that ***Defendant*** obtained Plaintiff's money. In the "Damages" section, the arbitrator identified the amount wrongfully taken from Plaintiff as $310,987.00. (Mot. Summ. J. (Docket No. 29), Ex. 6-A at 33.) For those reasons alone, Defendant's first defense fails.

The same can be said for Defendant's third defense, which is that it is not shown that "any of Defendant's misrepresentations and/or omissions were the proximate cause of Plaintiff's damages" and thus such were not actually litigated or necessarily determined by the arbitrator. Yet, the arbitrator's thirteenth conclusion states, "As a direct and proximate result of the acts and/or omissions committed by . . . Betty Semeniuk, Third Party John Tweedie has been damaged and will continue to be damaged, including loss of money, property, reputation, and credit worthiness." (Id. at 32.) The report then goes on to clarify that those damages include the aforementioned $310,987.00.

Defendant's second defense regards whether Plaintiff's reliance on Defendant's misrepresentations and/or omissions was justifiable, and whether or not the arbitrator's report shows that the issue was actually litigated and necessarily determined. The case of Field v. Mans, 516 U.S. 59, 70-71 (1995), provides the standard for justifiable reliance:

> [A] person is justified in relying on a representation of fact although he might have ascertained the falsity of the representation had he made an investigation. . . . [A]lthough the plaintiff's reliance on the misrepresentation must be justifiable . . . this does not mean that his conduct must conform to the standard of the reasonable man. Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases. Justifiability is not without some limits, however. . . . [A]

8

> person is required to use his senses, and cannot recover if he blindly
> relies upon a misrepresentation the falsity of which would be patent
> to him if he had utilized his opportunity to make a cursory
> examination or investigation. . . .
>
> . . . [I]t is only where, under the circumstances, the facts would be
> apparent to one of [the plaintiff's] knowledge and intelligence from
> a cursory glance, or he has discovered something which should serve
> as a warning that he is being deceived, that he is required to make an
> investigation of his own.

In the Hermoyian case, that Bankruptcy Judge found that, although the arbitrator's report is devoid of a <u>per se</u> finding of justifiable reliance, the report taken as a whole shows that the arbitrator found Plaintiff's reliance on Hermoyian's misrepresentation and/or omissions as justifiable for purposes of § 523(a)(2)(A). <u>Tweedie</u>, 466 B.R. at 369. The arbitrator specifically stated and found Hermoyian and Defendant indistinguishable in terms of their participation in the fraud, culpable conduct, and liability. As the arbitrator found the two as alter egos of each other, and the Judge in the Hermoyian proceeding based his conclusion on the arbitrator's explicit or implicit conclusion that Plaintiff justifiably relied on Hermoyian's misrepresentations and/or omissions, it necessarily follows that this Court should do the same. The Judge in the Hermoyian opinion carefully analyzed the facts and all of the collateral estoppel elements and issues in an exhaustive 70 or so page opinion, the details of which need not be repeated here. What does need to be said by this Court, in addition to adopting the reasoning and conclusions of that opinion, is that (1) consistently and throughout the state court arbitration report and its findings, the arbitrator essentially always spoke of "Hermoyian and Semeniuk" together and did so in the same breath and in joint terms and made little or no distinction between them in coming to his conclusions; and (2) whatever factual distinctions there might be between the actions of Hermoyian and those of Semeniuk, if any exist, such were and are too minimal or immaterial to either (a) make any difference in the result or (b)

9

be seen as making collateral estoppel inapplicable to this case or justifying relitigation of Semeniuk's case in this Court.

## Conclusion

Plaintiff's motion is granted and Plaintiff should present an appropriate order.

**Signed on July 05, 2012**

                                                                         **/s/ Walter Shapero**
                                          **Walter Shapero**
                                            **United States Bankruptcy Judge**